The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner W. Bain Jones, Jr., and the briefs and arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioners decision and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 11 August 1998 and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the provisions of the North Carolina Workers Compensation Act.
2. At all relevant times an employment relationship existed between plaintiff and defendant-employer.
3. Charles D. Goodwin, Incorporated was self-insured and Key Risk Management was the servicing agent.
4. Plaintiffs average weekly wage was $650.00 while working for defendant-employer.
5. The dates of the alleged contraction of an occupational disease are 4 December 1993 for Industrial Commission File Number 446581 and 12 May 1994 for Industrial Commission File Number 446162.
6. An Industrial Commission Form 18 was stipulated into evidence.
7. Plaintiffs medical records were stipulated into evidence as Stipulated Exhibit #1. This documentation consists of the following:
(1) Records from John Hopkins University;
(2) Records from Wishard Memorial Hospital
(3) Records from Indiana University Medical Center;
(4) A listing of bills from health care providers.
8. The medical records from Augusta Medical Center, Fisherville, Virginia, are stipulated into evidence as Stipulated Exhibit #2. These records consist of fourteen (14) pages concerning the care of Dr. Simon.
9. The issues before the undersigned are: (i) whether plaintiff contracted an occupational disease on 4 December 1993 and 12 May 1994; and (ii) if so, to what compensation, if any, is plaintiff entitled.
***********
 RULINGS ON EVIDENTIARY MATTERS
The objections raised in the depositions of Paul G. Auwaerter, M.D., Fran T. Meredith, M.D. and Ann D. Zerr, M.D. are OVERRULLED.
Defendant raised objections to the affidavit of Francis E. Meredith, M. D., which was submitted along with plaintiffs contentions to the Deputy Commissioner. In this affidavit, Dr. Meredith clarifies opinions expressed in his deposition. Industrial Commission Rule 611 and North Carolina Rule of Evidence 803, cited by the Deputy Commissioner in sustaining defendants objections, do not prohibit acceptance in the record of this affidavit. Accordingly, in the interest of justice and pursuant to Industrial Commission Rule 801, the Full Commission hereby OVERRULES defendants objections and said affidavit is hereby ADMITTED into the record of evidence.
***********
Based upon the entire evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner on 11 August 1998, plaintiff was thirty-two (32) years old and was a high school graduate. Plaintiffs work history includes working in a number of construction, sales and transportation jobs.
2. Plaintiff was employed by defendant-employer from July 1992 through 28 December 1993. During this period, plaintiff worked for defendant-employer as a long distance driver of tractor trailer trucks. While working for defendant in this capacity, plaintiff made deliveries to the southwest and west, specifically the states of California, Arizona, New Mexico and Texas. While employed by defendant-employer, plaintiff made approximately fifty to sixty (50-60) trips to the southwest and western regions of the United States.
3. On 10 March 1994, plaintiff began to experience symptoms requiring medical treatment at Wishard Memorial Hospital in Indianapolis, Indiana. At this initial examination, plaintiff was incorrectly diagnosed has having Hodgkins disease.
4. Plaintiff was again examined at Wishard Memorial Hospital on 15 March 1994, at which time a fine needle biopsy was performed on a lump on his neck. The results of this biopsy indicated presence of Coccidio fungi. Plaintiff was subsequently diagnosed with disseminated coccidioidomycosis for which he was first treated with Fluconazole, an oral medication. Because the Fluconazole medication was not effective, plaintiff was then treated intravenously with Amphotericin.
5. Dr. Ann D. Zerr, a treating physician at Wishard Memorial Hospital, confirmed in a 20 May 1994 letter that plaintiff had contracted disseminated coccidioidomycosis, which is a fungus related infection. As of the date of Dr. Zerrs letter, the infection had spread throughout plaintiffs body and was life threatening.
6. In October 1994, plaintiff was referred to Dr. Paul Auwaerter at Johns Hopkins Hospital in Baltimore. Dr. Auwaerter confirmed the diagnosis of coccidioidomycosis and plaintiff was again prescribed Fluconazole. Despite treatments, plaintiffs coccidioidomycosis infection resulted in an iliopsoas abscess on his right hip, which required hospitalization, surgical drainage and an extensive healing.
7. The organism causing the coccidioidomycosis infection lives in the soil found in the southwest and western regions of the United States. States included in this area where the infection causing fungus is located include California, Arizona, Nevada, New Mexico and parts of Texas. Furthermore, this fungus is geographically limited to that region of the United States and does not grow in North Carolina or in any state east of the Mississippi River. The organism can become airborne and inhaled, causing infections in humans.
8. Dr. Zerr has opined that plaintiff contracted coccidioidomycosis as the result of his work in the southwest as a truck driver for defendant-employer. Dr. Zerr opined that plaintiff contracted coccidioidomycosis while in the southwest or western regions of the country.
9. There is no evidence of exposure by plaintiff to the fungus causing coccidioidomycosis outside of his employment with defendant-employer. Additionally, based upon plaintiffs medical history, there is no evidence that plaintiff had ever contracted coccidioidomycosis prior to his employment with defendant-employer.
10. Regarding whether plaintiffs employment exposed him to an increased risk of contracting coccidioidomycosis and caused or significantly contributed to his development of this condition, greater weight is given to the expert medical opinions of Dr. Frances T. Meredith.
11. Based upon the credible evidence of record, the coccidioidomycosis infection which plaintiff contracted was caused by his employment with defendant-employer as a truck driver making deliveries to the southwest and western regions of the United States.
12. Regarding increased risk, expert medical opinions in this matter have varied. The opinions have depended on whether the expert was considering the common duties of truck drivers or long distance truck drivers, or whether the setting or location of where the work was performed was also considered. In determining whether plaintiffs occupation placed him at an increased risk over that of the general public of contracting the disease, it need not be shown that the disease originates exclusively from the occupation in question. Rather, it must be shown that the conditions of the employment resulted in a hazard which is not present in employment generally.
13. Based upon a review of the law and medical evidence, the Full Commission finds that consideration of the setting and location of the occupation in question is essential in determining whether an employee was placed at an increased risk of contracting the particular disease. In the case at hand, this requires consideration of plaintiffs work for defendant-employer as a long-distance truck driver making deliveries to the southwest and western regions of the United States.
14. Plaintiffs employment with defendant-employer as a long-distance truck driver making deliveries to the southwest and western regions of the United States exposed him to an increased risk of contracting coccidioidomycosis as compared to members of the general public not so employed.
15. At the time of the hearing before the Deputy Commissioner, plaintiff continued to receive medical treatment for his coccidioidomycosis from Dr. Denise Shane, at the Augusta Medical Center in Fisherville, Virginia.
16. At the time of the hearing before the Deputy Commissioner, plaintiff was employed as a truck driver for T. J. McGeehans Sales and Service operating out of Whitehaven, Pennsylvania. As of that date, plaintiff had worked for this employer for approximately two months. Previously, plaintiff had also worked for Centurion Auto Transport, which operated out of Jacksonville, Florida. There is insufficient evidence of record from which to determine the amount of wages earned by plaintiff while working for these employers.
17. As the result of plaintiffs occupational disease, plaintiff was unable to earn wages in his former position with defendant-employer or in any other employment for 25. 57 weeks (179 total days divided by 7) during the period of 4 December 1993 to 15 November 1995. The exact dates of when plaintiff was totally disabled are documented on Plaintiffs Exhibit (4), which is part of the record of evidence.
18. As the result of his occupational disease, plaintiff earned reduced wages for 5/7ths weeks during the period of 30 November 1993 to 14 May 1996. The exact dates of when plaintiff was partially disabled are documented on Plaintiffs Exhibit (4), which is part of the record of evidence. There is insufficient evidence of record as to the exact amount of reduced wages earned by plaintiff on these dates.
19. There is insufficient evidence of record regarding any permanent partial disability plaintiff may have sustained as the result of his occupational disease. Likewise, there is insufficient evidence of record regarding any scarring or disfigurement plaintiff sustained as the result of his occupational disease.
20. As the result of his occupational disease plaintiff has incurred, and will continue to incur, numerous expenses related to necessary medical treatment, including traveling costs.
21. Plaintiffs average weekly while working for defendant-employer was $650.00, yielding a compensation rate of $433. 55.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiffs average weekly wage while working for defendant-employer was $650.00, yielding a compensation rate of $433.55. N.C. Gen. Stat. 97-2(5).
2. Proof of a causal connection between a disease and an employees occupation may consist of the following: (1) the extent of exposure to the disease or disease causing agents during employment; (2) the extent of exposure outside employment, and; (3) the absence of the disease prior to the work related exposure as shown by the employees medical history. See e.g., Booker v.Duke Medical Center, 297 N.C. 458, 256 S.E.2d 189 (1979). In this case, the sole avenue of plaintiffs exposure came while driving through the infested area of the southwest as required by his employment and there is no history of the disease in plaintiffs medical records prior to the work related exposure. Therefore, plaintiffs employment with defendant-employer as a long-distance truck driver making deliveries to the southwest and western regions of the United States caused or significantly contributed to the development of his occupational disease coccidioidomycosis. N.C. Gen. Stat. 97-53.
3. But for the employment related requirement of traveling through an area where he was exposed to the fungus, he would not have contracted the disease. See e.g., Booker v. Duke Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979). Because members of the general public who do not face a like requirement in their occupations are not subject to the same risk, plaintiffs employment with defendant-employer as a truck driver making deliveries to the southwest and western regions of the United States exposed him to an increased risk of developing coccidioidomycosis. N.C. Gen. Stat. 97-53.
4. As the result of his occupational disease, plaintiff is entitled to be paid by defendant temporary total disability compensation at the rate of $433.55 per week for 25.57 weeks (179 total days divided by 7). N.C. Gen. Stat. 97-29.
5. As the result of his occupational disease, plaintiff is entitled be paid by defendant temporary partial disability compensation at the rate of two-thirds the difference between his average weekly wage of $650.00 and the wages he was able to earn for 5/7ths weeks. N.C. Gen. Stat. 97-30.
6. As the result of his occupational disease, plaintiff is entitled to have defendant pay for all medical expenses incurred or to be incurred, including necessary travel expenses. N.C. Gen. Stat.97-25.
7. Because there is insufficient evidence of record regarding any permanent partial disability, scarring or disfigurement plaintiff may have sustained as the result of his occupational disease, the determination on these issues is reserved. N.C. Gen. Stat. 97-31.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay to plaintiff temporary total disability compensation at the rate of $433. 55 per week for 25. 57 weeks. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorneys fee approved herein.
2. Defendant shall pay to plaintiff temporary partial disability compensation at the rate of two-thirds the difference between his average weekly wage of $650.00 and the wages he was able to earn for 5/7ths weeks. Because the evidence is insufficient at present regarding the exact amount of reduced wages earned by plaintiff on the dates in question, the parties shall agree to the amounts by stipulation or submit the relevant documents to the Full Commission for a final determination on this issue. Once determined, having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorneys fee approved herein.
3. Defendant shall pay for all medical expenses incurred or to be incurred as the result of plaintiffs occupational disease, including necessary travel expenses.
4. A reasonable attorneys fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff.
5. Defendant shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER